IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TRACEY JOHNSON                                                       PLAINTIFF

V.                         NO. 3:19CV00339 JM/JTK

ANDREW SAUL,
Commissioner of Social Security Administration[1]                  DEFENDANT

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Tracey Johnson ("Johnson"), applied for disability benefits on January 12, 2017, alleging a disability onset date of April 17, 2003. (Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 26). The Appeals Council denied her request for review (Tr. at 1), and so the ALJ's decision now stands as the final decision of the Commissioner. Johnson has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

**II. The Commissioner's Decision:**

The ALJ found that Johnson had not engaged in substantial gainful activity since the

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

alleged onset date of April 17, 2003. (Tr. at 14). At Step Two, the ALJ found that Johnson had the following severe impairments: degenerative disc disease, cervicogenic headaches, depression, and anxiety. *Id.*

After finding that Johnson's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Johnson had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she can occasionally climb stairs, lance, stoop, kneel, crouch and crawl, but can never climb ladders; (2) she can only occasionally reach overhead bilaterally; (3) she must avoid hazards, including unprotected heights and dangerous moving mechanical parts; (4) she can perform simple, routine, and repetitive tasks, as well as make simple work-related decisions; (5) she can concentrate, persist, and maintain pace with normal breaks; and (6) she requires incidental interpersonal contact with supervisors that is simple, direct, and concrete. (Tr. at 17).

The ALJ determined that Johnson had not past relevant work. (Tr. at 25). Relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Johnson's age, education, work experience and RFC, jobs existed in the national economy which she could perform. (Tr. at 25-26). Consequently, the ALJ found that Johnson was not disabled. *Id*.

### III.  Discussion:

    A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it

adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

  B. Johnson's Arguments on Appeal

Johnson argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ did not sufficiently resolve conflicts between the Dictionary of Occupational Titles and the VE's testimony, and that she should have given greater weight to the opinion of Dr. David Webber, D.O., her PCP. The Court finds support for Johnson's second argument, with respect to her severe headaches.[2]

Johnson testified that she had severe headaches that appeared with no warning that woke her up from sleeping. (Tr. at 46). She said that she could not tolerate bright light, and she said that family had to help bathe and dress her; she could not perform hardly any activities of daily living. (Tr. at 39-41). She underwent a variety of treatments for her headaches.

She began seeing Dr. Webber in 2007. (Tr. at 750-758). He noted severe neck and back pain with headaches in 2017. (Tr. at 702-710). For two years, Johnson saw Dr. Sunil Gera, M.D., a pain management specialist, and his records supported Johnson's claim of disabling headaches. (Tr. at 507-518, 566-574). Dr. Gera found restricted range of motion in her neck, diagnosed cervical headaches, and performed branch blocks bilaterally at C2-C5. (Tr. at 500). He also

---

[2] Although the Court's detailed discussion is targeted, we have considered her arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.

injected the exquisitely tender trapezius muscles. (Tr. at 537). This provided short term relief, and he next performed radiofrequency treatment. (Tr. at 566). By September 1, 2017, when Johnson reported no relief from the radiofrequency treatment, Dr. Gera said he had done all he could for her and that her daily headaches warranted a referral to a neurosurgeon for a brain MRI.[3] (Tr. at 761). Johnson had a scheduled appointment with a neurologist shortly after the hearing and was waiting on a referral for an MRI. Those records are not in evidence. (Tr. at 46-48).

While Johnson tried physical therapy, strong medication, and chiropractic care, her headaches persisted in 2017 and 2018. November 2017 chiropractic notes showed severe, radiating back pain, which was aggravated by all activities, and unchanged by treatment. (Tr. at 710-748). Johnson said medications only helped for a short period of time (Johnson took Percocet throughout 2017 and 2018 for her headaches). (Tr. at 568-570, 761). Physical therapy notes from 2018 showed that she had headaches 25%-49% of the time, with severe problems in sitting, standing, walking, and sleeping, and severe limitations on daily activities. (Tr. at 669-680).

These objective provider records make the following opinion from Dr. Webber about headaches all the more persuasive. He filled out a short form on November 3, 2017, stating that Johnson had headaches more than once a week lasting from two hours to multiple days, accompanied by nausea, vomiting, photophobia, phonophobia, and throbbing. (Tr. at 612-613). Dr. Webber opined that the headaches would interfere with her ability to work and would cause her to miss more than one day a week from work. *Id*.

The ALJ gave this opinion little weight, reasoning that it was largely based on subjective complaints. (Tr. at 22). The ALJ instead preferred the opinions of the two state-agency reviewing

---

[3] A record from December 2017 said that Johnson's headache pain was unchanged with treatment. (Tr. at 744-748).

4

doctors, who did not have the benefit of Dr. Gera's records or any 2018 reports. (Tr. at 21-22). The ALJ also did not mention Dr. Gera's opinion that he could offer no further help to Johnson since treatment didn't work. The Defendant also neglected to mention that statement or the fact that radiofrequency neurolysis was of no help.

It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). A treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). The ALJ, who did not even mention Dr. Webber by name or summarize his treatment records (she said it is not known how long Dr. Webber treated Johnson although there are clinic notes from Dr. Webber from 2007), failed to give sufficient reasons for discounting his opinion. The opinion was well-supported by other providers' treatment notes and Johnson's own statements. It was not harmless error; the VE testified that if Johnson would miss more than two days of work per month, no jobs would be available. (Tr. at 49). Dr. Webber said Johnson would miss one day of work per week. The ALJ erred in her evaluation of Dr. Webber's opinion.

## IV.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to accord proper weight to Dr. Webber's opinion.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 10th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE